924 F.2d 1058
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Edward LINGERFELT, Plaintiff-Appellant,
v.
NUCLEAR FUEL SERVICES, INC., Defendant,
and
Commercial Insurance Co. of Newark, New Jersey, and
Continental Insurance Co., Defendants-Appellees.
 No. 90-5320.
 United States Court of Appeals, Sixth Circuit.
 Feb. 5, 1991.
 
 Before DAVID A. NELSON and RYAN, Circuit Judges, and LIVELY, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 Plaintiff Edward Lingerfelt appeals the magistrate's judgment in favor of Commercial Insurance Company of Newark, New Jersey, with respect to Lingerfelt's claim for accident benefits under an employees' group-based accident insurance plan. The issues on appeal are 1) whether the magistrate's fact finding that disease rather than accident caused the employee's back injury is clearly erroneous, and 2) whether, assuming the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. Sec. 1001, et seq., applies, ERISA policy dictates that the insurance plan be construed to cover Lingerfelt's injuries.
 
 
 2
 We conclude that the magistrate's fact finding that disease caused the employee's injury is not clearly erroneous, and that even assuming ERISA governs this case, ERISA policy does not suggest that we construe an insurance plan clearly intended to cover only injury due to accident to cover injury due to disease.
 
 I.
 
 3
 Lingerfelt, a chemical operator at Nuclear Fuel Services, Inc. (NFS), suffered a sudden recurrence of back problems on October 6, 1987, while helping to lower a 250-pound motor from the roof of a building.
 
 
 4
 Lingerfelt was a contributing member of an accident disability insurance plan with Commercial Insurance Company. The plan policy was entitled, "Voluntary Accident Insurance Plan for Hourly Employees of Nuclear Fuel Services, Inc." NSF employees were not required to participate in the plan, and NSF did not help fund the plan, which was funded entirely by the employees themselves. Under the policy terms, Lingerfelt was covered "24 hours a day, 365 days a year against loss from any type of accident which occurs in the course of business or pleasure, including accidents on or off the job, occurring in or away from home, traveling by train, airplane, automobile, or other public and private conveyance (except as noted in "Exclusions" below)." Under the heading "Exclusions," the policy stated, "The policy excludes loss resulting from intentionally self-inflicted injuries or suicide or any attempt thereat; accident occurring while insured is on full-time active duty in any Armed Forces; pregnancy, childbirth, illness or disease...."
 
 
 5
 Under the heading "PERMANENT TOTAL DISABILITY," the policy further provided:
 
 
 6
 If injury occurring after the effective date of coverage and commencing within 365 days after an accident causes continuous total disability for 12 continuous months and you are judged to be permanently and totally disabled (unable to engage in each and every occupation or employment for compensation or profit for which you are reasonably qualified by reason of your education, training or experience), you will be paid the Principal Sum less any amount paid or payable under the policy as the result of the same accident.
 
 
 7
 A less conspicuous part of the policy clarified that the employee was insured "against loss resulting directly and independently of all other causes from bodily injuries caused by accident occurring while this policy is in force...."
 
 
 8
 Claiming that he was totally and permanently disabled as a result of the recurrence of his back problems, Lingerfelt filed a policy claim for disability benefits with Commercial Insurance Company and its subsidiary Continental Insurance Company. When his policy claim was denied, Lingerfelt brought suit in federal district court against Commercial Insurance Company, Continental Insurance Company (a subsidiary of Commercial Insurance), and NFS. He alleged jurisdiction under ERISA or alternatively under diversity of citizenship. The parties voluntarily dismissed NFS and Continental Insurance Company from the lawsuit.
 
 
 9
 Lingerfelt alleges that he was totally and permanently disabled as a result of the back injury and therefore is entitled to the $250,000 disability benefit under the policy. The insurance company refuses to pay on the grounds that Lingerfelt was not the victim of an "accident" as covered by the policy. Specifically, the company alleges that the back injury was due in whole or part to degenerative disc disease.
 
 
 10
 As required by Firestone Tire and Rubber Co. v. Bruch, 489 U.S. ----, 103 L.Ed.2d 80, 95-96 (1989), the magistrate evaluated the insurance companies' decision to deny benefits de novo. Following a trial, the magistrate found that plaintiff had a long history of back problems dating back to at least March 1973. These problems sometimes had required hospitalization and Lingerfelt had sought treatment for the problems periodically up until the time of the October 6, 1987, injury.
 
 
 11
 In June of 1975, for example, Lingerfelt injured his back while lifting some tubing on the job. A doctor gave his opinion that Lingerfelt suffered a thirty-five percent disability to his body as a whole due to that incident. The doctor restricted the plaintiff from lifting more than twenty-five pounds and noted that "[a]ny significant strenuous work causes a flare up.... He needs to get into a lighter type of work." Due to that injury, Lingerfelt received a lump sum payment under the Workers' Compensation Act, and he was absent from work due to long-term disability from December 24, 1975, until August 6, 1979. When Lingerfelt returned to work, he initially did only "light" work but then felt he could perform heavier labor and eventually returned to the heavy work he had been doing before the June 1975 injury.
 
 
 12
 In 1984, Lingerfelt was hospitalized again, partly due to low back pain. At that time a doctor thought Lingerfelt had degenerative arthritis. In 1986 a different doctor concluded Lingerfelt "showed multiple level degenerative disc disease." In November of 1986, this doctor released Lingerfelt to return to work but concluded, "He will need to continue to be careful with his back for the rest of his life because of his multiple level painful degenerative disc disease."
 
 
 13
 After the October 6, 1987, accident at issue here, Dr. Johnson, who had been following Lingerfelt's condition for several years, stated in effect that he could not say with certainty that Lingerfelt would be able to return to work in view of Lingerfelt's significant degenerative disc and facet disease. In a later deposition, Dr. Johnson stated in effect that while the October 1987 injury was the precipitating factor which removed Lingerfelt from the work force, there was no question that Lingerfelt also had suffered other back injuries. Dr. Johnson stated, "I have trouble separating the whole thing because there was certainly not one specific episode that is the origin of this man's back pain. There is a precipitating episode. There is an accident in October that did precipitate his removal from work and has led to his failure to return to gainful employment."
 
 
 14
 The magistrate evaluated Lingerfelt's claim filed pursuant to ERISA as the magistrate would evaluate any contract claim, by looking to the terms of the agreement and other indicia of the parties' intent. In view of the evidence just discussed, the magistrate concluded:
 
 
 15
 After reviewing the facts of this case and looking at the terms of the subject plan, [I find] that the plaintiff did not suffer a 'loss resulting directly and independently of all other causes,' but instead is unable to return to his former occupation with NFA as a result of a 'illness or disease' which he has been suffering for over fifteen years and which excludes him, under the terms of the policy, from receiving benefits. The proof shows that the plaintiff's severe and painful degenerative disc disease and arthritis combined and concurred with any injury he may have sustained in October of 1987 to cause his present condition. His own physician stated that he is suffering from a severe disc disease which is a significant factor in his present disability.
 
 
 16
 The magistrate also noted that Lingerfelt received a lump-sum workers' compensation payment and also receives Social Security disability benefits and long-term disability benefits under a separate group long-term disability insurance plan.
 
 II.
 
 17
 The magistrate's fact findings are subject to the clearly erroneous standard of review. Cf. Anderson v. Bessemer, 470 U.S. 564, 573 (1985). The magistrate found that "plaintiff's severe and painful degenerative disc disease and arthritis combined and concurred with any injury he may have sustained in October of 1987 to cause his present condition." This finding, based upon the magistrate's careful review of medical records and testimony documenting a fifteen-year history of back problems, is not clearly erroneous.
 
 III.
 
 18
 Determining whether Lingerfelt's injuries were covered by the insurance contract involves a mixed question of law and fact. Therefore, this determination is subject to de novo review. Blackburn v. Foltz, 828 F.2d 1177, 1181 (6th Cir.1987), cert. denied, 485 U.S. 970 (1988).
 
 
 19
 According to the language of a relatively easy-to-understand booklet distributed to NFS employees, the insurance plan very plainly and conspicuously excluded from coverage any losses resulting from illness and disease. Somewhat less conspicuously, the plan clarified that permanent disability benefits would be paid only due to disability resulting "directly and independently of all other causes from bodily injuries caused by accident." In view of the magistrate's fact finding that disease rather than accident caused Lingerfelt's back injuries, it might seem a foregone conclusion that Lingerfelt could not recover under this policy. When, despite his disc disease and his doctors' warnings, Lingerfelt persisted[1] in lifting heavy weights, the resulting disability more closely resembled an inevitable consequence than an unforeseen accident. We are not dealing here with a Workers' Compensation program or with a general long-term disability insurance plan--two programs under which Lingerfelt has received or is receiving benefits as a result of the November 1987 injury. We instead are dealing with an insurance policy covering only accidents, and Lingerfelt did not have an "accident" within any reasonable meaning of that term. To allow Lingerfelt to recover under the policy would distort the parties' initial bargain by changing the allocation of risk which the parties had in mind when they agreed to the amount of the insurance premium.
 
 
 20
 Nonetheless, Lingerfelt argues that even if state law would require following the literal language of the contract, federal policy under ERISA mandates a different outcome.[2] ERISA does preempt state-law causes of action insofar as they "relate to" employee benefit plans. 29 U.S.C. Sec. 1144; Pilot Life v. Dedeaux, 481 U.S. 41, 56 (1987). Additionally, Congress intended that "a federal common law of rights and obligations under ERISA-regulated plans would develop." Id. Stated differently, "ERISA's broad preemption provision makes it clear that Congress intended to establish employee benefit plan regulation as an exclusive federal concern, with federal law to apply exclusively, even where ERISA itself furnishes no answer." In re White Farm Equipment Co., 788 F.2d 1186, 1191 (6th Cir.1986). However, Lingerfelt can point to nothing in the federal common law in this area which would indicate that we should depart from the literal meaning of the language of his accident insurance contract.
 
 
 21
 We find no federal appellate case where the court was called upon to decide as a matter of federal common law under ERISA, whether an accident insurance plan should, despite its explicit language to the contrary, be read to cover injuries caused substantially or entirely by a known, pre-existing disease. Compare Adkins v. Reliance Standard Life Ins. Co., 917 F.2d 794 (4th Cir.1990). However, we regard as instructive language from a recent First Circuit opinion:
 
 
 22
 [T]he "federal common law of rights and obligations," Pilot Life, 107 S.Ct. at 1558, while still in formation, must embody common-sense canons of contract interpretation. Notwithstanding the ennobling purposes which prompted passage of ERISA, courts have no right to torture language in an attempt to force particular results or to convey ... nuances the contracting parties neither intended nor imagined. To the exact contrary, straightforward language in an ERISA-regulated insurance policy should be given its natural meaning.
 
 
 23
 Burnham v. Guardian Life Ins. Co., 873 F.2d 486, 489 (1st Cir.1989) (emphasis added and citation omitted). We believe that under the emerging federal common law, we should adhere to the literal language of accident insurance contracts except where public-policy considerations dictate a different course. Lingerfelt can point to no such countervailing public-policy considerations here.
 
 
 24
 The Eleventh Circuit has commented upon the public policy underlying ERISA:
 
 
 25
 [I]n formulating these laws [governing various aspects of the employee benefit field] courts must be guided by the general policies underlying ERISA. The general objective of [ERISA] is to increase the number of individuals in employer-financed benefit plans. Congress wanted to assure than those who participate in the plans actually receive the benefits they are entitled to and do not lose these as the result of unduly restrictive provisions or lack of sufficient funds.
 
 
 26
 Helms v. Monsanto, 728 F.2d 1416, 1420 (11th Cir.1984) (citing H.R.Rep. No. 93-807, 93rd Cong., 2nd Sess. 3, reprinted in 1974 U.S.Code Cong. & Ad.News, 4639, 4670, 4676-77) (emphasis added). A provision in an accident insurance policy providing in effect that the policy does not cover losses resulting from disease rather than from accident is not an "unduly restrictive" provision in our view. If this were a case where the employee's disease were subtle or latent, where the employee had not been warned against precisely the outcome that ensued, or where the disease contributed only negligibly to what was essentially an unforeseen calamity, then perhaps the insurance company would not be justified in denying benefits. In such a case, the employee's reasonable expectations might be upset by denying benefits. Here, however, we perceive nothing unconscionable or misleading about the accident policy on its face, and most importantly for us, Lingerfelt's situation falls within the clear language of the policy exclusions.
 
 
 27
 Lingerfelt cites several federal court cases to support his position, but all these cases are inapposite on two grounds: 1) the injured employees could point to some sudden, unexpected event that fits the common-sense notion of an accident, and 2) the injured employees were members of the United Mine Workers of America and covered by the UMWA disability plan. In Odom v. United Mine Workers of America, 687 F.2d 843, 847 (6th Cir.1982), a case upon which Lingerfelt relied at oral argument, the miner slipped while pulling a pipe wrench and then fell from a platform. Such an event indisputably is an accident, not a sudden recurrence of a known, pre-existing disease. The fall from the platform permanently damaged the miner's kidneys, which had been suffering from renal disease before the accident. We analyzed the issue of whether the mining accident caused the permanent injury as follows:
 
 
 28
 [Defendant's] own "proximate cause principle" set forth in its "Health Services Card Processing for Disabled Mine Workers," provides:
 
 
 29
 If the mine accident aggravated a pre-existing condition to the extent that the person became totally disabled, or if the mine accident occurred after a non-mine related injury and the two injuries combined resulted in total disability, then the mine worker shall be deemed to be totally disabled as a result of a mine accident. This rule applies even if evidence establishes that the mine related condition is only a small percentage of the disability.
 
 
 30
 This principle is commonly found in disability benefits programs, see 1 A. Larson, Law of Workmen's Compensation, section 12.20 (1978), and is akin to the tort principle that tortfeasors must take their victims as they find them. It is irrelevant whether a person with normal kidneys would have sustained permanent damage to his kidneys as a result of an accident. The question is whether the accident contributed in some part to the disability of appellant.
 
 
 31
 We conclude that there is not substantial evidence in the record to support a finding that the accident did not contribute to appellant's disability. To the contrary, the evidence overwhelmingly establishes that the accident did contribute to his disability. Therefore, the decision of the district court affirming the decision denying disability benefits must be reversed.
 
 
 32
 Id. at 847 (emphasis in original).
 
 
 33
 Odom reveals that the special regulations governing disability plans available to UMWA members help explain the outcome in the cases Lingerfelt cites. Additionally, the time-honored rule that one takes one's victim as one finds him does not apply where the employee, acting contrary to his physician's orders, engages in an activity which, proceeding normally as planned, predictably causes the employee the very injury against which his physicians had warned him.
 
 
 34
 Lingerfelt raises a number of miscellaneous policy arguments which, he believes, indicate that he should recover benefits under this accident policy. However, these arguments do not apply to the case of an insurance policy which explicitly insures only against accidents and which, from the employee's point of view, is supplemental to a more general policy that covers disability resulting from disease as well as disability resulting from accident. We believe that the employee's reasonable expectations were not upset in this case.
 
 IV.
 
 35
 The magistrate's order conforms to the plain language of the accident insurance contract and does not conflict with public policy. Accordingly, for the reasons given above, the magistrate's judgment is AFFIRMED.
 
 
 
 [1]
 It is unclear whether Lingerfelt was required to lift heavy weights in order to keep a job with NFS
 
 
 [2]
 Throughout this litigation both parties have agreed that ERISA law and policies govern the insurance contract at issue, and the pretrial order grounded jurisdiction on that basis. However, the magistrate expressed some doubt about whether ERISA actually covered this insurance contract. Accordingly, he decided to consider Lingerfelt's claim under the alternative assumptions that 1) ERISA and federal common law apply, and 2) Tennessee contract law applies. The magistrate determined that under either assumption, Lingerfelt was not entitled to the accident benefits. Since neither party disputes that ERISA applies and since its applicability would not change our holding in this case, we assume without deciding that ERISA does apply