963 F.2d 373
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jean M. CRISS, Plaintiff-Appellant,
v.
HARTFORD ACCIDENT & INDEMNITY COMPANY, et al., Defendants-Appellees.
 No. 91-2092.
 United States Court of Appeals, Sixth Circuit.
 May 28, 1992.
 
 Before DAVID A. NELSON and RYAN, Circuit Judges, and FORESTER,* District Judge.
 PER CURIAM.
 
 
 1
 Appellant Jean M. Criss challenges the district court's judgment in favor of Hartford Accident & Indemnity Company ("Hartford") which denied her claim for accidental death benefits surrounding the death of her husband, Albert Criss, who prior to his death was employed by a plan participant under the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. § 1001, et seq.
 
 
 2
 The issues on appeal are whether the district court erred in reviewing the plan administrator's decision de novo and in granting the Appellees' motion for summary judgment. For the reasons expressed below, the judgment of the district court is AFFIRMED.
 
 
 3
 * This is an ERISA action arising from the plan fiduciary's denial of Appellant's claim for accidental death benefits. Appellant filed a claim for judicial review of the fiduciary's decision, and the district court granted the fiduciary's motion for summary judgment.
 
 
 4
 Appellant's husband, Albert Criss, age 42, was employed as a sales manager for Tandem Computers, Inc., an ERISA plan participant. On August 30, 1988, at approximately 10:30 a.m., Albert Criss was returning from a sales call to a client when he was involved in an automobile accident. He had stopped his car in the left turn lane waiting to make a left-hand turn; the car was rear-ended and was pushed into the side of a semi-tractor trailer that was passing him in the opposite direction.
 
 
 5
 Following the accident, Albert Criss was hospitalized with the following diagnostic impressions: multiple trauma secondary to motor vehicle collision; fracture of lower right leg; fracture of seventh rib on right side; a laceration of the mesentery of the small bowel; arteriosclerotic cardiovascular disease; hypertension; and questionable history of old inferior myocardial infarction. Soon after admission, Criss underwent surgery where the doctors resected his small bowel and applied a cast to his lower right leg. The tear of the mesentery was repaired, the hemoperitoneum was resolved, and he survived the initial treatment.
 
 
 6
 However, Criss's hospitalization also revealed that he was suffering from severe heart disease and that at some unknown time in the past, he had suffered a myocardial infarction which was previously undiagnosed. Once his heart disease was diagnosed, plans were discussed regarding treatment of this condition, including a cardiac catherization. Diagnostic testing of his heart was performed daily during his hospitalization. Unfortunately, on September 2, 1988, the third day of Criss's hospitalization, he went into cardiac arrest and died. The death certificate listed the immediate cause of death as "Severe Coronary Artery Disease," due to, or as a consequence of, "Arteriosclerotic Cardiovascular Disease," and described the death as "Natural."
 
 
 7
 Criss was insured by his employer under two different insurance policies: Policy ADD-3164, an accidental death and dismemberment policy, and Policy ETB-18175, a travel accident policy, which required the employee to be on a business trip at the time of the loss. The two policies contain the identical term defining injury, as follows:
 
 
 8
 Injury means, and you are covered for, bodily injury resulting directly and independently of all other causes from accident which occurs while you are covered under this policy. Loss resulting from:
 
 
 9
 a) sickness or disease, except a pus-forming infection which occurs through an accidental wound; or
 
 
 10
 b) medical or surgical treatment of a sickness or disease; is not considered as resulting from injury.
 
 
 11
 Appellant filed a claim for insurance benefits under these two policies. Hartford denied her claim because the medical evidence established that Criss died from coronary heart disease and not from injuries sustained in the automobile accident. Hartford took the position that Criss's death from heart disease was excluded under the terms of the policies.
 
 
 12
 The district court agreed with Hartford that based on the medical evidence, it was clear that Criss died at least in part from heart disease, and probably from a combination of heart disease and the injuries sustained in the car accident. The court looked at the plain meaning of the exclusionary language in these policies and concluded that Criss's death was not covered thereunder.
 
 II
 
 13
 The issues to be determined are whether the district court utilized the proper standard in reviewing the plan administrator's decision and whether the district court erred in granting the Appellees' motion for summary judgment.
 
 A. Appropriate Standard of Review
 
 14
 Plaintiff/appellant asserts that her claim for accidental death benefits arises under 29 U.S.C. § 1132. In Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948 (1989), the Supreme Court defined the standard of review when an administrator's decision to deny benefits is challenged under 29 U.S.C. § 1132(a)(1)(B), as follows:
 
 
 15
 ... we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.
 
 
 16
 489 U.S. at 115. Thus, if the plan administrator has no discretion in determining eligibility for benefits or in construing the terms of the plan, a de novo standard of review is required.
 
 
 17
 In reviewing the policy language of the two subject insurance contracts, the district court correctly determined that under Firestone it was required to apply a de novo standard of review because neither of these policies gave any indication of granting express or implied discretion to the plan administrator or any other party to interpret the terms of the employee benefits plan. However, de novo review under ERISA is limited to the evidence previously presented to and considered by the plan administrator. Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 986 (6th Cir.1991); Perry v. Simplicity Engineering, 900 F.2d 963 (6th Cir.1990); McMahan v. New England Mutual Life Ins. Co., 888 F.2d 426, 430-431 (6th Cir.1989).
 
 B. Law Applicable to ERISA Actions
 
 18
 Congress intended that "a federal common law of rights and obligations under ERISA-regulated plans would develop." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56 (1987). This intention is clearly expressed in Section 514(a) of ERISA, as set forth in 29 U.S.C. § 1144(a), which provides:
 
 
 19
 Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this Title and not exempt under section 1003(b) of this title.
 
 
 20
 With this broad Congressional intent in mind, any state law that relates to an ERISA plan is preempted, even if the state law is not specifically designed to affect such plans or if the effect of state law is only indirect. Pilot Life, 481 U.S. at 47. This court has previously recognized the plan to allow a body of federal common law regarding ERISA to develop:
 
 
 21
 ... ERISA's broad preemption provision makes it clear that Congress intended to establish employee benefit plan regulation as an exclusive federal concern, with federal law to apply exclusively, even where ERISA itself furnishes no answer.
 
 
 22
 In re White Farm Equipment Co., 788 F.2d 1186, 1991 (6th Cir.1986). Thus, while federal law clearly controls this case, the federal courts may review relevant state law approaches in the area of insurance contract interpretation in an attempt to develop this burgeoning area of federal common law. "Borrowing those concepts which are best reasoned may be prudential." Wickman v. Northwestern Nat. Ins. Co., 908 F.2d 1077, 1084 (1st Cir.1990).
 
 
 23
 C. Summary Judgment to the Defendants/appellees
 
 
 24
 Looking at this case de novo and reviewing the medical evidence that was before the plan administrator, the district court determined that the Defendants/appellees were entitled to summary judgment. Fed.R.Civ.P. 56 directs the disposition of a motion for summary judgment. Rule 56(c) states in relevant part:
 
 
 25
 The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.
 
 
 26
 The district court's function in ruling on a motion for summary judgment is to determine if any genuine issue exists for trial, not to resolve any factual issues, and to deny summary judgment if material facts are in dispute. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). In short, summary judgment is only appropriate when no genuine issue of material fact remains to be decided, and when the undisputed facts, viewed in a light most favorable to the non-moving party, entitle the movant to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The court is required to consider all pleadings, depositions, affidavits, and admissions on file and draw reasonable inferences in favor of the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).
 
 
 27
 Ultimately, the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304 (6th Cir.1989) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986)). See also, Street v. J.C. Bradford & Co., 886 F.2d 1472 (6th Cir.1989).
 
 
 28
 Thus, if this record reveals the absence of a genuine issue of material fact, the judgment of the district court must be affirmed. Miller v. Metropolitan Life Ins. Co., supra; Perry v. Simplicity Engineering, supra; McMahan v. New England Mutual Life Ins. Co., supra.
 
 
 29
 It is undisputed that Albert Criss suffered from heart disease which was at least a partial cause of his death. In support of their motion for summary judgment, the Defendants asserted that Mr. Criss died solely as a result of his heart disease. In responding to this summary judgment motion, the Plaintiff contended that Mr. Criss's accidental bodily injuries, trauma, and surgery triggered his heart attack and thus were the primary or predominant cause of his death. In analyzing this motion for summary judgment, the district court recognized that it was obligated to consider all pleadings, depositions, affidavits, and admissions on file and draw reasonable inferences against the party seeking summary judgment. Therefore, in considering this motion for summary judgment, the district court adopted the Plaintiff's theory of Mr. Criss's cause of death and assumed that he died from a combination of heart disease and injuries resulting from the automobile collision.
 
 
 30
 The district court summarized the medical evidence before the plan administrator, as follows:
 
 
 31
 Five physicians have testified as to the cause of Mr. Criss's death: Dr. Brooks, the Oakland County Medical Examiner, Dr. Lewis, the treating cardiologist, Dr. Spitz, Plaintiff's expert in pathology, Dr. Fintel, Plaintiff's expert in cardiology, and Dr. Hull, Defendants' expert in cardiology.
 
 
 32
 The physicians' testimony is strikingly similar. All agree that Mr. Criss suffered from severe arteriosclerosis, and that his heart disease contributed to his death. They differ, however, as to the extent of the contribution.
 
 
 33
 After an autopsy, Dr. Brooks determined that the deceased suffered from acute myocardial infarction superimposed upon old healed myocardial infarction with extremely severe coronary artery disease. He added that this heart disease was longstanding, and concluded that the cause of death was the heart disease. He noted that the deceased was likely to have suffered from a heart attack under any conditions, but cautioned that it was possible that the stress factors emanating from the injuries incurred in the automobile accident may have precipitated the heart attack. The Certificate of Death listed the immediate cause of death as "Severe Coronary Artery Disease," due to, or as a consequence of, "Arteriosclerotic Cardiovascular Disease," and described the death as "NATURAL."
 
 
 34
 Dr. Lewis testified that there was a very high likelihood that Mr. Criss died as a result of a heart attack and that this attack was most likely secondary to the injury and surgery.
 
 
 35
 Dr. Hull contended that Mr. Criss's heart disease was the sole cause of death and that Mr. Criss had a one-in-five chance of dying suddenly in any given year as a result of his heart condition.
 
 
 36
 Both Dr. Spitz and Dr. Fintel testified that the stress and trauma involved in the collision played a major role in causing Mr. Criss's death by heart attack.
 
 
 37
 There being no dispute that Mr. Criss died from a combination of heart disease and injuries sustained in the car accident, the district court looked at the plain meaning of the relevant language of the insurance policies, which expressly stated:
 
 
 38
 Injury means, and you are covered for, bodily injury resulting directly and independently of all other causes from accident which occurs while you are covered under this policy. Loss resulting from:
 
 
 39
 a) sickness or disease, except a pus-forming infection which occurs through an accidental wound; or
 
 
 40
 b) medical or surgical treatment of a sickness or disease;
 
 
 41
 is not considered as resulting from injury.
 
 
 42
 (Emphasis supplied). In reviewing this ERISA policy provision, the district court correctly determined that the straightforward language in this policy must be given its natural meaning. Burnham v. Guardian Life Ins. Co. of America, 873 F.2d 486, 489 (1st Cir.1989). The district court found the plain language of these two insurance policies to be dispositive. In the district court's view, the plain language "establishes that the policies will cover only those narrow instances in which there is an absolute nexus between the accident and the loss."
 
 
 43
 In a recent unpublished Sixth Circuit decision relied upon by both the Appellant and the Appellees, Lingerfelt v. Nuclear Fuel Services, Inc., 1991 WL 11615, 1991 U.S.App. LEXIS 1822 (6th Cir. Feb. 5, 1991), the Lingerfelt Court adopted the Burnham approach and emphasized the importance of a strict interpretation of the plain language of an insurance policy, stating:
 
 
 44
 ... We believe that under the emerging federal common law, we should adhere to the literal language of accident insurance contracts except where public-policy considerations dictate a different course.
 
 
 45
 Lingerfelt, supra, 1991 WL 11615, at * 2, 1991 U.S.App. LEXIS 1822, at * 6. Relying on Lingerfelt and Ann Arbor Trust Co. v. Canada Life Assurance Co., 810 F.2d 591 (6th Cir.1987), a non-ERISA case decided under Michigan law, the district court discerned no public policy that would be threatened by giving a strict interpretation to policy language in Mr. Criss's insurance policy that loss resulting from sickness or disease is not considered as resulting from injury. Such a loss resulting from sickness or disease was specifically excluded from coverage under Mr. Criss's ERISA plan.
 
 III
 
 46
 It is clear from the medical evidence before the plan administrator that Mr. Criss's heart disease was at least partly responsible for his death. All five physicians agreed that he had heart disease; they only disagreed as to the degree that this disease contributed to his death. However, the dispute over whether his fatal heart attack was triggered by the underlying heart disease or by the trauma from injuries sustained in the car accident and the subsequent surgery becomes irrelevant in view of the exclusionary language of the insurance policies in question. These policies specifically exclude from coverage any loss resulting from sickness or disease. There being no doubt that Mr. Criss's death occurred from a combination of the underlying heart disease and injuries sustained in the collision, the question of which one of these two factors triggered the fatal heart attack is immaterial. Clearly, one of the factors causing the loss was the heart disease, which the policy excluded from coverage.
 
 
 47
 The district court determined that the plan administrator properly denied Appellant's claim for ERISA benefits because under the terms of the policies, the cause of death did not result directly and independently from injuries sustained in the accident. In reaching this conclusion, the district court relied on the first sentence of the policy language explaining which injuries were covered under the policy. In particular, the policy stated that only injuries "resulting directly and independently of all other causes from accident" were covered injuries. The district court reasoned that to be covered under these policies, there had to be an absolute nexus between the accident and the loss.
 
 
 48
 The district court need not have determined whether the policy required the injury to have resulted directly and independently of all other causes, as stated in the first sentence of the injury definition. The second sentence of the injury definition is dispositive. This sentence expressly states, "Loss resulting from sickness or disease ... is not considered as resulting from injury." Thus, the district court unnecessarily determined that there had to be an absolute nexus between the accident and the loss before the injury would be covered under the policy. The undisputed fact that Mr. Criss's death resulted from a combination of heart disease and injuries sustained in the accident was sufficient to preclude coverage under the unambiguous terms of these policies.
 
 IV
 
 49
 For the foregoing reasons, the district court correctly determined that the plan administrator properly denied Appellant's claim for benefits under her decedent's ERISA policies. Therefore, the decision of the district court granting Defendants/appellees' motion for summary judgment is hereby AFFIRMED but not for the reasons expressed by the district court.
 
 
 50
 DAVID A. NELSON, Circuit Judge, concurring.
 
 
 51
 I concur in the judgment and in all but Part III of the per curiam opinion. As to the matter covered in that part, I have no particular problem with what I understand to be the analysis employed by the district court.
 
 
 52
 The district court quoted the relevant policy language--a two-sentence definition of "injury"--as follows:
 
 
 53
 "Injury means, and you are covered for, bodily injury resulting directly and independently of all other causes from accident which occurs while you are covered under this policy. Loss resulting from:
 
 
 54
 a) sickness or disease, except a pus-forming infection which occurs through an accidental wound; or
 
 
 55
 b) medical or surgical treatment of a sickness or disease; is not considered as resulting from injury." (Emphasis by the district court.)[1]
 
 
 56
 The district court evidently considered both sentences important. I agree; it is the two sentences together, in my view, that make it clear there can be no recovery when death results, as the district court assumed it did here, from a combination of disease and accidental injury.
 
 
 57
 The insuring provision of the accidental death and dismemberment policy says that "[i]f your injury results in any of the following losses within 365 days after the date of accident, we will pay the sum shown opposite the loss." (The sum shown opposite "Loss of Life" in this policy is the "Principal Sum" listed in an attached schedule.) The term "injury," as used in the insuring provision, is defined by the two sentences quoted in the preceding paragraph of this opinion.
 
 
 58
 The first sentence of the definition says that injury means--and the insured person is covered for--"bodily injury resulting directly [from accident] and independently of all other causes...." The plaintiff argues that if Mr. Criss' broken leg, broken rib and torn bowel resulted from the automobile accident "directly and independently of all other causes," it makes no difference that the "loss" for which payment is sought--i.e., Mr. Criss' death--resulted from a combination of heart disease and traumatic injuries.
 
 
 59
 Without the second sentence of the definition, the plaintiff's argument might have some force. As the district court emphasized, however, the second sentence declares that "[l]oss resulting from ... sickness or disease ... is not considered as resulting from injury." The second sentence thus resolves the possible ambiguity in the first by making it clear that "bodily injury" is used there to comprehend the "loss" for which payment is sought under the insuring provision.
 
 
 60
 If it stood alone, the second sentence might itself be deemed ambiguous; without more, "[l]oss resulting from ... disease" might mean either loss resulting exclusively from disease or loss resulting in part from disease. But the second sentence does not stand alone--it must be read in conjunction with the first sentence. When read together, it seems to me, the two sentences can only mean that the insured person is covered for loss resulting directly from accident and independently of sickness or disease.
 
 
 61
 I doubt that the district court intended to rely solely on the first sentence of the definition. In any event, I think it would be inappropriate to rely on either sentence to the exclusion of the other--and when each is read in light of the other, the totality of the language compels the result reached by the plan administrator, the district court, and this court.
 
 
 
 *
 The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 This language comes from the "Definitions" section of the accidental death and dismemberment policy. The wording of the corresponding provision of the travel accident policy is slightly different, but the differences are not material