LINCOLN MUTUAL CASUALTY COM-
PANY, a Michigan Insurance Com-
pany, Plaintiff–Appellant,

v.

LECTRON PRODUCTS, INC., EMPLOY-
EE HEALTH BENEFIT PLAN, De-
fendant–Appellee.

No. 91–1371.

United States Court of Appeals,
Sixth Circuit.

Argued June 12, 1992.

Decided July 29, 1992.

Rehearing Denied Aug. 25, 1992.

David M. Lawson (argued and briefed), Detroit, Mich., for plaintiff-appellant.

Margaret A. Lynch (argued and briefed), Michael V. Kell, Thomas S. Nowinski, Clark, Klein & Beaumont, Detroit, Mich., for defendant-appellee.

Kevin J. Moody (briefed), Miller, Canfield, Paddock & Stone, Lansing, Mich., for Lufthansa German Airlines amicus curiae.

Before: MERRITT, Chief Judge; MILBURN, Circuit Judge; and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

In this dispute over the impact of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, on the parties' liability for claims for medical expenses arising from an automobile accident, Plaintiff, Lincoln Mutual Casualty Company ("Lincoln"), appeals the district court's grant of summary judgment and dismissal in favor of Defendant, Lectron Products, Inc., Employee Health Benefit Plan ("the Plan"). For the following reasons, we conclude that the district court correctly determined that ERISA preempts

application of the Michigan statute on which Lincoln relies. We conclude, however, that resolution of the preemption issue is not dispositive of this case. We, therefore, reverse the district court's dismissal and remand the case for the district court to resolve, under federal common law, the conflict between the Plan's and Lincoln's coordination-of-benefits provisions.

I

Charles and Diane Sisson and their six children sustained injuries in an automobile accident. The Sissons sought payment of their approximately $247,900 in medical expenses from the ERISA-regulated employee health benefit plan of Mrs. Sisson's employer, Lectron Products, Inc. The Plan is self-funded but purchases, from Harbor Insurance Company ("Harbor"), stop-loss insurance to cover its losses for catastrophic claims. At the time of the Sissons' accident, the contract between Harbor and the Plan provided that Harbor would reimburse the Plan when, as here, two or more family members are involved in the same accident and their total medical expenses during the year of the accident exceed $75,000.

Relying on language in the Plan limiting to $300 its liability for expenses arising from automobile accidents when coverage is also available pursuant to a state's no-fault automobile insurance act, the Plan refused to pay the Sissons' health-care providers more than $300 per family member.[1] Upon the Plan's denying coverage for additional medical expenses, Lincoln, the Sissons' no-fault automobile insurer, paid the Sissons' medical expenses, notwithstanding the coordination-of-benefits ("COB") provision contained in the Lincoln policy, to wit:

> In consideration of the reduction of premium for which this endorsement is issued:
> A. EXCESS MEDICAL BENEFITS. ... the Company shall not be liable to the extent any Personal Injury Protection Insurance allowable expense benefits are paid, payable, or required to be provided to or on behalf of the person named in the policy, his or her spouse and any relative of either domiciled in the same household, under the provisions of any valid and collectible,
> 1. Individual, blanket, or group accident disability, medical, surgical, or hospitalization insurance or reimbursement plan....

When the Plan refused Lincoln's claim for reimbursement, Lincoln, in Michigan state court, instituted the instant action for declaratory relief and reimbursement. Noting that the Plan's exclusionary language conflicts with the COB clause that Michigan law, through Mich.Comp.Laws § 500.3109a, requires a no-fault insurer to include in its policies covering insureds who elect to coordinate benefits, Lincoln asserted that, under *Federal Kemper Insurance Co. v. Health Insurance Administration, Inc.*, 424 Mich. 537, 383 N.W.2d 590 (1986), the terms of its policy prevail.[2]

The Plan removed the action to federal court and subsequently filed a motion for summary judgment on the ground that ERISA preempts the state law that would hold the Plan primarily responsible for the

---

1. The Plan contains the following language:
   *General Exclusions:* The calculation of benefits payable under this Plan shall not include or be based on any charge made for or in connection with any Hospital Confinement, or any examination, or any surgical, medical or other treatment, or any service or supply:

   .    .    .

   (1) which is for expenses incurred ... in excess of $300 per Covered Person which arise out of, or as a result of, a motor vehicle accident when benefits are provided under a no-fault automobile insurance act, including any amendments thereto....

2. Mich.Comp.Laws § 500.3109a requires a no-fault insurer to offer its insureds reduced premi-

ums in exchange for coordinating no-fault benefits with the insureds' other insurance coverage. The statute provides:

> An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured.

Mich.Comp.Laws § 500.3109a (1991). Furthermore, the Michigan Supreme Court, in *Federal Kemper*, 424 Mich. at 551, 383 N.W.2d at 596, held that primary liability falls on the health insurer (in the instant case, the Plan) when a conflict exists between the COB clauses of a no-fault automobile policy and a health insurance policy.

Sissons' medical expenses. Lincoln filed a cross-motion for summary judgment on the ground that, to the extent that the Plan offers health and accident insurance coverage or, in any event, to the extent that it has stop-loss insurance, ERISA does not preempt state regulation of the Plan.

The district court referred the motions to a magistrate judge, who filed a report and recommendation in which she determined that ERISA preempts the application of § 3109a. Relying on *FMC Corp. v. Holliday,* — U.S. ——, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), she concluded that the State of Michigan could regulate neither the provisions of the Plan nor the terms and conditions of the payment of benefits under the Plan. She recommended granting the Plan's motion for summary judgment and denying Lincoln's cross-motion. The district court entered an order adopting the magistrate judge's report, granting the Plan's motion for summary judgment, and dismissing Lincoln's complaint. Lincoln now appeals the entry of judgment in favor of the Plan.

## II

We review a grant of summary judgment de novo. *Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 965 (6th Cir.1991). There being no factual issues in dispute, the issues for review in this case are strictly matters of law.

## III

### A

■ Clearly, a conflict exists between the coverage terms of the Plan and the statutorily required COB clause of Lincoln's no-fault insurance policy. The general exclusions in the Plan purport to hold no-fault insurers primarily responsible for medical expenses arising from an automobile accident. On the other hand, when insureds elect to pay reduced premiums in exchange for coordinating no-fault benefits with other insurance coverage, Lincoln, a no-fault insurer, is required by the State of Michigan to place primary responsibility for such expenses on the suppliers of "ex-cess medical benefits," such as the Plan. Resolution of this dispute, therefore, requires us to apply § 514(a) of ERISA, the ERISA preemption clause, as set out in 29 U.S.C. § 1144(a). Moreover, because the case implicates Michigan's regulation of insurance, we must consider also subparagraphs 514(b)(2)(A) and (B), 29 U.S.C. §§ 1144(b)(2)(A) & (B), ERISA's so-called "savings" and "deemer" clauses.

The relevant ERISA provisions read in pertinent part as follows:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan....

29 U.S.C. § 1144(a) (the preemption clause).

> Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

29 U.S.C. § 1144(b)(2)(A) (the savings clause).

> Neither an employee benefit plan ... nor any trust established under such plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

29 U.S.C. § 1144(b)(2)(B) (the deemer clause).

We summarized the significance of the above provisions in *Liberty Mutual Insurance Group v. Iron Workers Health Fund of Eastern Michigan,* 879 F.2d 1384, 1386 (6th Cir.1989), when we stated:

> [I]t appears that if a state law "relate[s] to" an ERISA benefit plan it is preempted; but if the state law "regulates insurance" it is not preempted. But an ERISA covered employee benefit plan that provides insurance coverage is "deemed" not to be an insurance compa-

ny for purposes of state laws regulating insurance, and ERISA, therefore, preempts such state laws.

Upon review of the facts in the instant case, we conclude that Mich.Comp.Laws § 500.3109a, as it relates to the Plan, is not "saved" under the insurance-regulation exception to preemption because, under the "deemer" clause, the Plan is " 'deemed' not to be an insurance company for purposes of state laws," such as § 3109a, that purport to regulate insurance contracts. *Id.* In the instant case, as in *Liberty Mutual,* the Michigan statute would impermissibly regulate the Plan directly, requiring it to exceed the amount of coverage it offers for injuries resulting from automobile accidents that are covered under a no-fault insurance policy. *See id.* at 1388. The fact that the Plan provided health and accident benefits, therefore, does not subject it to state regulation. Unless the Plan's purchase of stop-loss insurance requires a different result, ERISA preempts application of the Michigan statute in this case.

### B

■ Next we must address the effect of the contract between the Plan and Harbor, under which Harbor reimburses the Plan for claims the Plan is required to pay in excess of $75,000. In essence, we must determine whether, and to what extent, the Plan's purchase of stop-loss insurance allows the state to regulate the Plan. Lincoln contends that, for claims above $75,000, the Plan is "insured" for ERISA purposes and, therefore, under *FMC Corp. v. Holliday,* —— U.S. ——, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), is subject to regulation by the state.

We conclude that Lincoln's contention is without merit. As the *FMC* Court instructs us, "if a plan is insured, a State may regulate it *indirectly through regulation of its insurer and its insurer's insurance contracts.*" —— U.S. at ——, 111 S.Ct. at 411 (emphasis added). Because Mich.Comp.Laws § 500.3109a and Michigan case law interpreting § 3109a, *see Federal*

*Kemper Ins. Co. v. Health Ins. Admin., Inc.,* 424 Mich. 537, 383 N.W.2d 590 (1986), would *directly* regulate the Plan under the circumstances of the instant case, ERISA preempts the application of Michigan law.

■ Contrary to Lincoln's assertion, *FMC* does not hold that states are free to regulate ERISA plans insofar as the plans are insured. Instead, we read the *FMC* Court to hold that states may not regulate ERISA plans but may, consistent with the traditional state regulation of insurance, regulate the companies that insure ERISA plans. Although a plan may be affected by the state's regulations "insofar as [the regulations] apply to the plan's insurer," —— U.S. at ——, 111 S.Ct. at 409, the effect is "indirect" and, therefore, is not prohibited by federal law. In other words, the deemer clause relieves ERISA benefit plans— both uninsured and insured plans—from direct state regulation, but, because the clause does not relieve a plan's insurer, state regulation may have an incidental, or "indirect," effect on ERISA plans.[3] Consequently, in the case at bar, ERISA preempts the application of state law even though the Plan holds stop-loss insurance for losses in excess of $75,000. Federal law, not Michigan law, therefore, governs whether Lincoln or the Plan is primarily responsible for the Sissons' medical expenses.

### IV

■ The Plan contends that, once we have determined that ERISA preempts Michigan law, our inquiry is at an end. Determination of the preemption issue, however, does not resolve the dispute between the Plan and Lincoln; it merely answers the question of whether Michigan law governs the dispute. Having answered that question in the negative, we must now address the fact that, as in *Auto Club Insurance Association v. Health & Welfare Plans, Inc.,* 961 F.2d 588 (6th Cir. 1992), the Plan contains a provision that competes with the COB clause of the Sissons' no-fault insurance policy.

---

**3.** To the extent that our opinion in *Northern Group Services, Inc. v. Auto Owners Insurance Co.,* 833 F.2d 85 (6th Cir.1987), *cert. denied,* 486

U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988), held otherwise, it is no longer viable in light of *FMC.*

As we noted in *Auto Club,* the fact that § 3109a is preempted by ERISA does not necessarily render Lincoln's COB clause void, nor does it necessarily mean that the Plan's terms prevail. *See id.* at 593. We have before us, then, two valid, unambiguous, and irreconcilable clauses. Because no federal statutory law addresses the issue of how to resolve the conflict between the clauses, this case must be resolved by applying federal common law. *See id.; Winstead v. Indiana Ins. Co.,* 855 F.2d 430, 433–34 (7th Cir.1988), *cert. denied,* 488 U.S. 1030, 109 S.Ct. 839, 102 L.Ed.2d 971 (1989). In the instant case, the parties did not address this matter before the district court. We must, therefore, as we did in *Auto Club,* remand the case to the district court where the parties will have an opportunity to brief the issue of how to resolve the conflict under federal common law.

### V

For the foregoing reasons, although the district court did not err in its determination that ERISA preempts § 3109a as it relates to the Plan, we REVERSE the district court's dismissal of this action and REMAND the case for the district court to resolve the conflict between the incompatible COB clauses of the no-fault policy and the Plan.