**AUTO–OWNERS INSURANCE COMPANY, Plaintiff,**

v.

**THORN APPLE VALLEY and Chris L. Shattuck, Defendants.**

No. 1:92–CV–583.

United States District Court, W.D. Michigan, S.D.

April 13, 1993.

John P. Seyfried, Garan, Lucow, Miller, Seward, Cooper & Becker, Port Huron, MI, for plaintiff.

Bradley T. Raymond, Finkel, Whitefield & Selik, PC, Farmington Hills, MI, for defendants.

## OPINION

ROBERT HOLMES BELL, District Judge.

In this ERISA[1] case involving a sponsor of a self-funded employee welfare benefit plan and a Michigan no-fault insurer, two conflicting "other insurance" or coordination of benefits provisions are presented. The question—which appears to be one of first impression in this Circuit—is which party, under federal common law, is primarily liable for coverage of a car accident injury claim in such a case. Concluding that the primary liability must be shared on a *pro rata* basis by the insuring parties, the ERISA plan sponsor's motion for dismissal/summary judgment is DENIED and the no-fault insurer's cross-motion for summary judgment is GRANTED.

### I.

#### A.

The facts are not in serious dispute. Chris Shattuck ("Shattuck"), a minor, was injured in a motor vehicle accident on June 18, 1989. His injuries required medical attention.

Shattuck had two insurers for his medical expenses: Auto–Owners Insurance Company ("Auto–Owners"), his father's Michigan no-fault insurance carrier; and his father's self-funded employee welfare benefit plan sponsored by Thorn Apple Valley ("Thorn Apple"). Both Auto–Owners' no-fault policy and Thorn Apple's ERISA plan contained an unambiguous, valid, and irreconcilable "other insurance" or a coordination of benefit provision, which effectively placed the other insur-er primarily liable for expenses arising out of car accident injuries.

Auto–Owners initially paid the medical expenses related to Shattuck's injuries. Subsequently, Shattuck's father submitted claims for medical benefits related to Shattuck's injuries to Thorn Apple's ERISA plan.

Thorn Apple's ERISA plan denied Shattuck's father's claims. It relied on its coordination of benefits provision contained in its ERISA plan. This denial, in turn, caused Auto–Owners to commence this action.

#### B.

The complaint was first filed in the Ionia County Circuit Court in Michigan. It was then removed to this Court on August 24, 1992.

In the complaint, Auto–Owners seeks to "recoup" from Thorn Apple all amounts which Auto–Owners has paid for medical benefits on behalf of Shattuck. It also requests a declaration that Thorn Apple, not Auto–Owners, is primarily liable for any of Shattuck's future automobile accident related medical expenses. Auto–Owners alleges that under its required coordination of benefits provision in its no-fault policy, *see* Mich. Comp.Laws § 500.3109a, which is in conflict with Thorn Apple's ERISA plan's coordination of benefits provision, it is entitled to recoupment of past expenses from Thorn Apple and a declaration of secondary liability for Shattuck's future expenses. *See Federal Kemper Ins. Co. v. Health Ins. Administration, Inc.*, 424 Mich. 537, 383 N.W.2d 590 (1986).

In response, Thorn Apple moves for dismissal under Fed.R.Civ.P. 12(b)(6) and/or summary judgment under Rule 56. Auto–Owners opposes Thorn Apple's motion and requests entry of summary judgment in its favor instead.[2]

### II.

Thorn Apple advances two principal arguments in support of its motion. First, Thorn Apple contends that Auto–Owners' state law

---

1. The Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461.

2. This Court construes Auto–Owners's request as a cross-motion for summary judgment.

no-fault claim is preempted by ERISA. Second, Thorn Apple argues that once there is a finding of ERISA preemption, federal law provides no further remedy for Auto–Owners. In short, Thorn Apple's position is that the ERISA preemption analysis is the only required substantive inquiry to resolve this coverage dispute involving conflicting "other insurance" or coordination of benefits provisions.

Auto–Owners, on the other hand, suggests that the inquiry is not so straightforward. While conceding—at oral argument—that ERISA preempts Michigan's no-fault statute, Auto–Owners asserts that the real analysis only begins once that preemption finding is made; that under the recent Sixth Circuit law, courts must fashion an appropriate rule under federal common law of ERISA after finding that federal law governs a coverage dispute involving competing "other insurance" or coordination of benefits provisions contained in an ERISA plan and a no-fault insurance policy. And in fashioning such a federal rule, Auto–Owners urges this Court to adopt an approach taken by another federal circuit.

### A.

This Court's analysis must, of course, begin with the applicable standard of review. Because matters outside the pleadings have been considered in evaluating the parties' motions, this Court must treat the motions as ones for summary judgment, and apply the standard for summary judgment. *See* Fed. R.Civ.P. 12(b); *Friedman v. United States*, 927 F.2d 259, 261 (6th Cir.1991).

Rule 56 provides the compass for evaluating summary judgment motions. It states that summary judgment is appropriate only if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56; *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 403 (6th Cir. 1992).

After careful review, there appears to be no genuine issue as to any material fact in this case. Except for one additional ERISA plan document submitted by Thorn Apple in support of its motion, both parties rely on the same alleged facts in the complaint. And the parties' almost exclusive focus on the two legal questions, the applicability of ERISA preemption and the availability of federal common law rule, only confirms the belief that there are no triable issues of fact at hand.

### B.

This Court must then turn to the legal questions. Although two legal questions were originally presented by the parties, only one requires extended discussion now.

### (1).

The first question, whether Auto–Owners's state law no-fault claim of recoupment is preempted by ERISA, is all but settled. In its initial responsive brief[3] to Thorn Apple's motion, Auto–Owners implicitly acknowledges that its state law no-fault claim is preempted by ERISA. *See* Auto–Owners Memorandum of Law at 8. And at oral argument, Auto–Owners, in response to this Court's inquiry, expressly conceded that preemption. Finally, no mention is made of ERISA preemption in Auto Owners's supplemental brief. *See* Plaintiff's Response to Supplemental Brief in Support of Defendant's Motion to Dismiss and/or for Summary Judgment.

Of course, even if Auto–Owners had not acquiesced on Thorn Apple's preemption argument, it would not have been successful. The prevailing Sixth Circuit law—consistent with the Supreme Court's teaching in *FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990)—holds that where, as here, state law—such as the Michigan No-Fault Insurance Act, Mich.Comp.Laws § 500.3100 *et seq.*—relates to an ERISA plan, the federal law of ERISA preempts that state law. *Lincoln Mutual Casualty Co. v. Lectron Products, Inc., Employee Health Ben. Plan*, 970 F.2d 206, 209–210 (6th Cir.1992); *Auto Club Ins. Ass'n v. Health and Welfare Plans, Inc.*, 961 F.2d 588, 592–93 (6th Cir.1992). Therefore, Auto–Owners's no-fault claim based on Michigan law is no longer viable in light of ERISA preemption.

---

**3.** The parties have filed supplemental briefs during the pendency of the instant motions.

(2).

But that does not end the matter. Because ERISA preemption does not resolve the coverage dispute, but merely suggests that federal law, instead of state law, governs the dispute, *see Lincoln Mutual,* 970 F.2d at 210–11; *Slice v. Norway,* 978 F.2d 1045, 1046 (8th Cir.1992), this Court must next turn to the second question: what federal law resolves the dispute here.

(i).

To begin, the ERISA statute itself does not provide an answer. Nothing in the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461, addresses an "other insurance" or a coordination of benefits provision that may contain in an insurance policy. *Lincoln Mutual,* 970 F.2d at 211; *see also PM Group Life Ins. Co. v. Western Growers Assur. Trust,* 953 F.2d 543, 546 (9th Cir. 1992) (Kozinski, J.) (noting that ERISA does not provide a coordination of benefits provision to resolve conflicts between two ERISA plans). Accordingly, there is no statutory ERISA rule that this Court can readily apply to resolve the dispute here.

In enacting the ERISA statute, however, Congress anticipated this sort of a problem. Its legislative history indicates that Congress foresaw occasions where there would be gaps left in the express provisions of ERISA, *see Menhorn v. Firestone Tire & Rubber Co.,* 738 F.2d 1496, 1499 (9th Cir.1984), and in such occasions, Congress intended courts to fill the interstices by developing federal common law of ERISA. *See* 120 Cong.Rec. 29,-942 (1974) (remarks of Sen. Javits); *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) (citing *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987)); *see also Kwatcher v. Massachusetts Serv. Employees Pension Fund,* 879 F.2d 957, 966 (1st Cir.1989).

To be sure, the Sixth Circuit has heeded this legislative directive by repeatedly recognizing the need to develop federal common law to address various issues involving rights and obligations under an ERISA plan. *See, e.g., Whitworth Bros. Storage Co. v. Central States, Southeast & Southwest Areas Pen-*

*sion Fund,* 982 F.2d 1006 (6th Cir.1993) (reviewing under federal common law whether a contractual limitation on refunds for contributions mistakenly made is unreasonable); *Flacche v. Sun Life Assur. Co.,* 958 F.2d 730 (6th Cir.1992) (declining to review the definition of the term fiduciary under federal common law because the ERISA statute already expressly addresses the term); *Armistead v. Vernitron Corp.,* 944 F.2d 1287 (6th Cir.1991) (reviewing the doctrine of equitable estoppel under the Circuit's established federal common law).

In fact, the Sixth Circuit has specifically recognized that federal common law of ERISA must be developed to address the central question in this case, namely, what coverage priority rule should apply in a case where there are two competing "other insurance" or coordination of benefits provisions. *See Lincoln Mutual Casualty Co. v. Lectron Products, Inc., Employee Health Ben. Plan,* 970 F.2d 206, 211 (6th Cir.1992); *Auto Club Ins. Ass'n v. Health and Welfare Plans, Inc.,* 961 F.2d 588, 594–95 (6th Cir.1992).[4]

(ii).

In formulating a federal common law rule for evaluating a coverage priority question, this Court may review state law approaches, particularly because "states generally having had much more experience in the area of insurance contract interpretation." *Wickman v. Northwestern Nat'l Ins. Co.,* 908 F.2d 1077, 1084 (1st Cir.), *cert. denied,* 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990); *see also Phillips v. Lincoln Nat'l Life Ins. Co.,* 978 F.2d 302, 311 (7th Cir.1992) (in making federal common law rules, it is "proper to turn to state law when creating such rules, ... as long as such state law is consistent with the policies underlying the federal statute at issue").

Two principal state law approaches have emerged. The Michigan Supreme Court has distinguished them as majority and minority views in *Federal Kemper Ins. Co. v. Health Ins. Administration, Inc.,* 424 Mich. 537, 383 N.W.2d 590 (1986):

---

**4.** Despite this suggestion by the Sixth Circuit, it appears that no district court in this Circuit (or elsewhere) has yet developed a federal common law rule that is applicable here.

The majority rule attempts to reconcile the competing provisions by discerning the parties' intent through an analysis of the clauses. Critics of this approach argue that it is circular and that the decision as to which clause is primary depends on which policy is read first. Thus some courts deem the provisions "mutually repugnant" and reject both clauses. Courts adopting this minority view ... hold that liability must be prorated.

*Id.* at 543, 383 N.W.2d 590 (citations omitted); *see generally* 8A Appleman, *Insurance Law and Practice* §§ 4907.65–4909 (1981).

The Michigan Supreme Court has not endorsed either approach. Rather, the Michigan Supreme Court has staked a different position by formulating a special rule mandating that when a no-fault insurance policy and a health insurance policy contain conflicting coordinated benefits provisions, the health insurance carrier will be primarily liable for the insured's medical expenses resulting from injuries suffered in a motor vehicle accident. *Federal Kemper,* 424 Mich. at 551, 383 N.W.2d 590.

In reviewing which of the foregoing approaches might be suitable here, however, this Court does not have a clean slate. In *Auto Club Insurance Association v. Health and Welfare Plans, Inc.,* 961 F.2d 588 (6th Cir.1992), the Sixth Circuit, addressing similar circumstances as here, suggested an approach that a district court may consider. The Sixth Circuit indicated, without expressly mandating, that in developing federal common law to resolve a conflict in two coordination of benefits provisions, the district court should review the Seventh Circuit's decision in *Winstead v. Indiana Insurance Co.,* 855 F.2d 430 (7th Cir.1988), *cert. denied,* 488 U.S. 1030, 109 S.Ct. 839, 102 L.Ed.2d 971 (1989).[5]

In *Winstead,* the Seventh Circuit was confronted with an ERISA plan and a non-ERISA automobile insurance policy governed by Michigan's no-fault insurance law.[6] Both the ERISA plan and the non-ERISA insurance policy contained a coordination of benefits provisions. In resolving the conflict between the two provisions to determine primary coverage liability, the Seventh Circuit endorsed the district court's ruling that, based on federal common law, the liability between the ERISA plan and the non-ERISA insurer should be apportioned on a *pro rata* basis. The Seventh Circuit further explained that:

> Application by the district court in this case of such a solomonic apportionment of liability is not only in keeping with generally accepted notions derived from state common law, [citing insurance law treatises], but seems eminently fair and equitable.

*Winstead,* 855 F.2d at 434.

After careful review, this Court agrees with the *Winstead* approach—which is the minority state law approach in apportioning liability—in resolving a conflict in "other insurance" or coordination of benefits provisions. Besides the reasons already stated by the Seventh Circuit, this *pro rata* approach, as a federal common law rule, is a simple one to apply. *See cf. Edelmann v. Chase Manhattan Bank, N.A.,* 861 F.2d 1291, 1301 n. 63 (1st Cir.1988) (Wisdom, J., sitting by designation) ("A simple rule promotes predictability, certainty, and uniformity from case to case."). And adopting this approach, of course, promotes national uniformity, since another federal court has previously done so. *See PM Group Life,* 953 F.2d at 548. Finally, the *pro rata* approach, which provides coverage under an ERISA plan, is consistent with the purpose of ERISA of "protecting the interests of Plan members and their beneficiaries." *Luby v. Teamsters Health, Welfare, & Pension Trust Funds,* 944 F.2d 1176, 1187 (3d Cir.1991).

---

**5.** The Sixth Circuit repeated this suggestion by approvingly citing *Winstead* in a later decision addressing the same issue. *See Lincoln Mutual Casualty Co. v. Lectron Products, Inc., Employee Health Ben. Plan,* 970 F.2d 206, 211 (6th Cir. 1992).

**6.** Although *Winstead* preceded the Supreme Court decisions in *FMC Corp. v. Holliday,* 498

U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), and *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101 (1989), the Sixth Circuit found that those Supreme Court decisions did not affect *Winstead. See Auto Club,* 961 F.2d at 595 n. 14. And this Court's research discloses no Seventh Circuit decision repudiating or criticizing *Winstead.*

■ Accordingly, this Court adopts the following rule as the appropriate coordination of benefits rule under ERISA: When there is a conflict between two unambiguous, valid, and irreconcilable "other insurance" or coordination of benefits provisions in an ERISA plan and a non-ERISA insurer, such as a Michigan no-fault insurer, the coverage responsibility must be apportioned between the insurers on a *pro rata* basis.

#### (iii).

Applying the *pro rata* rule here, this Court finds that the primary liability for Shattuck's medical expenses, including the future expenses, related to the automobile accident must be shared on a *pro rata* basis (50 percent each) by Auto–Owners and Thorn Apple, the two insuring parties. Thorn Apple's argument to the contrary is therefore rejected.

#### (3).

Having so concluded, this Court turns to Thorn Apple's other arguments. Two are worthy of brief discussion: (1) Thorn Apple asserts that this Court need not address any of the issues in this case for lack of exhaustion of internal administrative remedies; and (2) Thorn Apple claims that there is no "real" conflict between the two coordination of benefits provisions.

■ This Court disagrees with both contentions. First, the exhaustion requirement is applicable when a participant or a beneficiary of an ERISA plan is challenging the Plan's denial of a benefit claim. *See Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 453–54 (6th Cir.1991). It is not applicable where, as here, a declaratory judgment and recoupment action—not a claim for benefits under ERISA—is brought by a non-participant or a nonbeneficiary of an ERISA plan.

Second, Thorn Apple's argument regarding the characterization of the two coordination of benefits provisions in question—an argument mentioned in passing—was heard, considered, and rejected by the Michigan Supreme Court in *Federal Kemper*. *See* 424 Mich. at 542–44, 383 N.W.2d 590; *see also Auto Owners Insurance Co. v. Lacks Industries*, 156 Mich.App. 837, 839–40, 402 N.W.2d 102 (1986) (rejecting a similar argument on the basis of *Federal Kemper*). There is no need to further discuss what the Michigan Supreme Court has already carefully explained.

#### III.

For the reasons stated above, Thorn Apple Valley's motion for dismissal or summary judgment is DENIED and Auto–Owners Insurance Company's cross-motion for summary judgment is GRANTED.