**LINCOLN MUTUAL CASUALTY COM-PANY, a Michigan Insurance Company, Plaintiff,**

v.

**LECTRON PRODUCTS, INC. EM-PLOYEE HEALTH BENEFIT PLAN, Defendant.**

No. 90–71372.

United States District Court, E.D. Michigan, S.D.

June 15, 1993.

9. The amount of the award will be calculated as follows:

|  |  |  |
|---|---|---|
| Fee: | 64.03 hours × $125.00 = | 8003.75 |
| Costs: |  | 171.90 |
|  |  | ———— |
|  | TOTAL AWARD | $8175.65 |

David Lawson and James Mulcahy, Detroit, MI, for plaintiff.

Michael Kell, Birmingham, MI, for defendant.

*ORDER ADOPTING, IN PART, AND REJECTING IN PART, THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT, AND DISMISSING THIS ACTION IN ITS ENTIRETY, WITH PREJUDICE*

ROSEN, District Judge.

This matter is presently before the Court on the April 26, 1993 Report and Recommendation of United States Magistrate Judge Virginia M. Morgan, recommending that the Court grant summary judgment in favor of the Defendant employee health benefit plan

and dismiss Plaintiff's Complaint in its entirety on waiver grounds or, in the alternative, on the basis of application of federal common law.[1]

■ The Court has reviewed the Magistrate Judge's Report and Recommendation, Plaintiff's Objections to the Report and Recommendation, Defendant's Response to Plaintiff's Objections, the Sixth Circuit's July 29, 1992 Opinion in this case, and the Court's entire file of this matter.[2] Based upon that review, the Court agrees with Plaintiff's assertion at page 5 of its Objections that the Court of Appeals made it clear that it wants the conflict between Plaintiff's no-fault policy and the Defendant plan resolved "based on federal common law." For this reason, the Court finds no merit in the Defendant plan's argument that Plaintiff Lincoln Mutual is precluded—by application of the doctrine of waiver—from arguing a basis for recovery in this action under federal common law. Moreover, ERISA decisional law in this Circuit suggests that a litigant whose state-law claim is determined to be preempted should be afforded an opportunity to have his claim considered on the merits under ERISA or be allowed to amend his complaint to attempt to assert a federal law-based ERISA claim. *See Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 982–983 (6th Cir.1991).

For these reasons, the Court rejects that portion of Magistrate Judge Morgan's Report and Recommendation [pp. 5–7 of the R & R] recommending that the Defendant Plan's motion for summary judgment be granted on the basis of waiver.

On the other hand, the Court finds the rest of the Magistrate Judge's April 26, 1993 R and R to be well-reasoned to fully address the issues as specifically ordered by the Court of Appeals. Therefore, the Court AC-

---

1. This case came back before this Court following an order of remand from the Sixth Circuit Court of Appeals, in which the Sixth Circuit agreed with Magistrate Judge Morgan and this Court that Plaintiff's state law cause of action was preempted under ERISA, but ordered the case remanded for resolution of the conflict between the coordination of benefits clauses in Lincoln Mutual's no-fault insurance policy and Lectron's employee benefit plan by application of federal common law. *Lincoln Mutual Casualty*

Co. v. Lectron Products, Inc., Employee Health Benefit Plan, 970 F.2d 206, 211 (6th Cir.1992).

2. The Court also reviewed and considered an Opinion filed by the Honorable Robert Holmes Bell of the Western District of Michigan in *Auto–Owners Insurance Co. v. Thorn Apple Valley*, 818 F.Supp. 1078 (W.D.Mich.1993 Opinion) addressing the same "conflicting coordination of benefits" issue presented in this case.

CEPTS and ADOPTS Magistrate Judge Morgan's very thorough and thoughtful Report and Recommendation on the application of federal common law, and will GRANT summary judgment in favor of the Defendant on the basis of application of federal common law as detailed by Magistrate Judge Morgan.

NOW, THEREFORE,

For the foregoing reasons and for the reasons stated by the Magistrate Judge in her April 26, 1993 Report and Recommendation,

IT IS HEREBY ORDERED that the April 26, 1993 Report and Recommendation of Magistrate Judge Virginia M. Morgan is ADOPTED AND ACCEPTED, in part, and REJECTED, in part, as set forth above in this Order.

IT IS FURTHER ORDERED that for the reasons stated by the Magistrate Judge in her Report and Recommendation, summary judgment is hereby GRANTED in favor of the Defendant employee health benefit plan, and this case, accordingly, is hereby, DISMISSED in its entirety, with prejudice. ·

Let Judgment be entered accordingly.

### REPORT AND RECOMMENDATION

MORGAN, United States Magistrate Judge.

This matter is before the court following an order of remand from the Sixth Circuit. The defendant has filed a motion for summary judgment to which plaintiff has responded. This case involves a dispute over the impact of the Employee Retirement Security Income Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461, on the parties' liability for an insured's medical expenses resulting from an automobile accident. The plaintiff is Lincoln Mutual Casualty Company ("Lincoln"), a Michigan insurance company; defendant is Lectron Products, Inc. Employee Health Benefit Plan ("Plan"), an ERISA-qualified health and welfare benefit plan. Plaintiff had claimed that it was due reimbursement from the Plan pursuant to a state statute. This court granted summary judgment to the Plan, and dismissed the case, finding that ERISA preempted application of the state statute: MCLA § 500.3109a. Under that statute and the case law interpreting it, primary liability was allocated to the health insurer as against an automobile insurance carrier with respect to claims for injuries to an insured arising out of an automobile accident.

The Court of Appeals affirmed the district court's finding of preemption, but held that the finding of preemption did not resolve the case. The court remanded the case for "the district court to resolve the conflict between the incompatible COB [coordination of benefits] clauses of the no-fault policy and the plan." 970 F.2d 206, 211 (6th Cir.1992). The Court of Appeals found that the Plan and Lincoln Mutual each had valid, unambiguous, and irreconcilable clauses. The court stated:

> "Because no federal statutory law addresses the issue of how to resolve the conflict between the clauses, this case must be resolved by applying federal common law. See [*Auto Club Insurance Association v. Health and Welfare Plans, Inc.*, 961 F.2d 588 (6th Cir.1992)]; see *Winstead v. Indiana Ins. Co.*, 855 F.2d 430, 433–34 (7th Cir.1988) *cert. denied*, 488 U.S. 1030, 109 S.Ct. 839, 102 L.Ed.2d 971 (1989)."

970 F.2d at 211.

The parties had not raised the issue of application of federal common law in the district court. The defendant has on remand filed a second motion for summary judgment to which the plaintiff has responded.[1]

---

1. A status conference was held shortly after remand. Additional time was granted the parties in order for them to take whatever additional discovery they desired, and then to submit briefs on the issue presented in the order of remand. However, it should be noted that the defendant's motion does not address the outcome of the case applying federal common law. The issues before the court are designated as preliminary issues. Neither party has addressed what the outcome of the case would be if federal common law were applied. Each party would like additional time to adequately brief the matter of the application of federal common law, but each also concedes that the expense already incurred in litigating this case has been substantial. Indeed, the defendant's waiver argument (see discussion, *infra*) is grounded on the fact that Lincoln Mutual has unfairly delayed its claim of recovery based on federal common law, "sandbagging" the court and the Plan, and forcing the Plan to use its

The Plan argues that Lincoln Mutual has waived federal common law as a basis of recovery against the Plan where it failed to raise the claim until it filed its reply brief in the appellate court. The Plan argues further that federal common law may only be used to allocate medical expenses to which ERISA's indirect regulation applies, i.e. to that portion of the medical expenses which the Plan would pay through "stop loss" insurance.

For the reasons discussed in this Report, it is recommended that the motion be granted on the issue of waiver, but if no waiver, then federal common law should apply to the totality of the expenses. It is further recommended that pursuant to such application the Plan would be entitled to summary judgment.

### FACTS

In 1989, Charles and Diane Sisson and their six children were injured in an automobile accident. Mr. Sisson was insured under a no-fault automobile insurance policy issued by Lincoln. Mrs. Sisson was an employee of Lectron Products and as such, she and her family were covered by the defendant ERISA-qualified employee health benefit plan. The Plan contained the following language:

"*General Exclusions:* The calculation of benefits payable under this Plan shall not include or be based on any charge made for or in connection with any Hospital Confinement, or any examination, or any surgical, medical or other treatment, or any service or supply:

(1) which is for expenses incurred ... in excess of $300 per Covered Person which arise out of or as a result of, a motor vehicle accident when benefits are provided under a no-fault automobile insurance act, including any amendments thereto."

The Lincoln policy provided:

"In consideration of the reduction of premium for which this endorsement is issued:

A. EXCESS MEDICAL BENEFITS ... the Company shall not be liable to the extent any Personal Injury Protection Insurance allowable expense benefits are paid, payable, or required to be provided to or on behalf of the person named in the policy, his or her spouse and any relative of either domiciled in the same hospital, under the provisions of any valid and collectible,

1. Individual, blanket, or group accident, disability, medical, surgical, or hospitalization insurance or reimbursement plan.

Lincoln Mutual paid approximately $500,-000 in medical expenses arising out of this automobile accident and sued the Plan for reimbursement, arguing that MCLA § 500.-3109a made the Plan the primary coverage source for all of the Sissons' medical expenses. In response, the Plan pointed out that the Plan documents clearly excluded payment for these expenses, except to the extent of $300 per covered person, and that ERISA preempted the Michigan law.

On November 30, 1990, the magistrate judge issued a Report and Recommendation granting the Plan's motion of summary judgment and agreeing that ERISA preempted § 3109a. The Report and Recommendation was adopted by the district judge and Lincoln Mutual appealed.

On July 29, 1992, the United States Court of Appeals for the Sixth Circuit filed its opinion and judgment, affirming the finding of preemption, reversing the dismissal of the action, and remanding the case with directions to resolve, under federal common law, incompatible coordination of benefits clauses in the no fault insurance policy and in the Plan. The court stated:

"Clearly, a conflict exists between the coverage terms of the Plan and the statutorily required COB clause of Lincoln's no fault insurance policy. The general exclusions in the Plan purport to hold no fault insurers primarily responsible for medical expenses arising from an automobile accident. On the other hand, when insureds elect to pay reduced premiums in exchange for coordinating no fault benefits with other insurance coverage, Lincoln, a no fault insurer, is required by the State of Michigan to place primary responsibility for such expenses on the suppliers of 'excess

limited resources to pay for litigation rather than health care.

medical benefits,' such as the Plan. Resolution of this dispute, therefore, requires us to apply Section 514(a) of ERISA, the ERISA preemption clause, as set out in 29 U.S.C. § 1144(a)."

970 F.2d at 209

The Sixth Circuit concluded that ERISA preempted the Michigan statute. However, the Sixth Circuit believed that answering this question did not resolve the dispute between the Plan and Lincoln Mutual; it merely answered the question of whether Michigan law governed the dispute. It did not. The court held that the fact that § 3109a is preempted by ERISA does not necessarily render Lincoln's COB clause void, nor does it necessarily mean that the Plan's terms prevailed, citing *Auto Club Insurance Association v. Health and Welfare Plans, Inc.*, 961 F.2d 588, 593 (6th Cir.1992). The court concluded that because the parties did not address this matter in the district court, the case should be remanded in order for the parties to have an opportunity to brief the issue of how to resolve the conflict under federal common law, as the Appellate Court had ordered done in *Auto Club*.[2]

### WAIVER

The Plan contends that Lincoln · Mutual waived its federal common law claim against the Plan because Lincoln Mutual never raised this claim in the district court or in its primary appeal brief. A review of the pleadings shows that Lincoln Mutual did not allege that federal common law provided a basis for recovery at any point in the district court, including its complaint, its Motion for Summary Judgment, its Response to the Plan's Motion for Summary Judgment or in its objections to the Magistrate's Report and Recommendation. Lincoln Mutual also omitted the issue from its initial appeal brief, and only raised it, for the first time in this three year litigation, in its second brief to the Sixth Circuit.

This circuit has held that issues not raised before the district court may not be raised for the first time on appeal and may not be

the subject of appellate adjudication. *Bannert v. American Can Company*, 525 F.2d 104, 111 (6th Cir.1975) *cert. denied*, 426 U.S. 942, 96 S.Ct. 2662, 49 L.Ed.2d 394 (1976); see also *Wright v. Holbrook*, 794 F.2d 1152, 1157 (6th Cir.1986) and authorities cited therein. Additionally, issues not raised in objections to a Magistrate's Report and Recommendation are waived. *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987); see also *Auto Club Ins. v. Lectron Products Inc. Employee Benefit Health Plan*, companion case to this action, Case No. 90–73388 (Order Attached as Exhibit D to Defendant's Brief) (dismissing appeal for failure to file objections to Magistrate's Report and Recommendation). Further, issues not raised in an initial appeal brief are waived. *Wright v. Holbrook, supra,* at p. 1156; *Priddy v. Edelman*, 883 F.2d 438, 446 (6th Cir.1989).

Lectron has never had a ruling on the issue of waiver, because the plaintiff raised this new theory of recovery at such a late point in the proceedings. The Sixth Circuit, while apparently asking questions about waiver at oral argument, did not discuss nor rule on the issue in its opinion. Thus, this court must determine in the first instance as to whether waiver has occurred. While it is clear that under the Sixth Circuit opinion federal common law will govern allocation of medical expense claims in further cases, Lincoln should not be able to rely on this alternate theory of recovery in this case. It must be concluded, based on the pleadings, that the claim of Lincoln Mutual for recovery against the Plan, on the basis of federal common law, is not properly before the court. The only basis upon which Lincoln Mutual sought recovery in its complaint was its entitlement to recovery pursuant to MCLA § 500.3109a and case law under it, which made health "insurers" primarily liable. See, *Federal Kemper Ins. v. Health Ins. Admin.*, 424 Mich. 537, 383 N.W.2d 590 (1986). However, that statute was held to be preempted by ERISA, and thus not cannot serve as a basis for recovery. No other basis for recov-

---

2. *Auto Club Insurance Association v. Health & Welfare Plans, Inc.*, 961 F.2d 588 (6th Cir.1992). This was a case in the Eastern District of Michigan, and was assigned to Hon. Bernard Friedman. On remand, the case was settled by the parties without opinion from the court.

ery other than that statute was raised by Lincoln. Therefore, Lincoln has waived whatever right it may have to recovery under federal common law. The Plan's motion for summary judgment should be granted on the basis of waiver.

## FEDERAL COMMON LAW

"The mandate must be interpreted reasonably ... and the inquiry must be directed at ascertaining the intention of the reviewing court.... The mandate of the appellate court is the guide of the lower court in executing the judgment of the court above."

14A *Cyclopedia of Federal Procedure* §§ 69.-18, 69.99, pp. 88–89, 109–110 (3rd Ed.1992), cited by plaintiff.

■ If, however, the district judge should determine that the Sixth Circuit mandate, reasonably interpreted, directs this court to determine, without consideration of waiver, the outcome of this case based on an application of federal common law, then it is respectfully suggested that summary judgment be granted to the Plan on the grounds that without the applicability of the state statute and decisional law imposing primary liability on the health "insurer," [3] ordinary contract principles and other federal decisions would direct a determination that the Plan is entitled to limit its obligation for medical expenses and to exclude or limit claims for injuries arising out of automobile accidents.

In an effort to assist the court and reduce the briefing which may be requested from counsel, some brief background regarding federal common law is provided. Federal common law is often referred to as an uncharted area. As noted by many commentators, the Supreme Court's enthusiasm for creating federal common law reached its high point in two cases: *Swift v. Tyson,* 41 U.S. (16 Pet.) 1, 10 L.Ed. 865 (1842) where it declared the federal court's duty to create

federal common law in contract cases, and the Court's extension of that idea to tort cases in *Baltimore and O.R.R. v. Baugh,* 149 U.S. 368, 13 S.Ct. 914, 37 L.Ed. 772 (1893).[4] Although the Court sharply curtailed the making of federal common law in *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a diversity case, federal common law has not died. However, in the last twenty years, "some judges and commentators have suggested that the creation of federal common law is always (or almost always) illegitimate, relying for that conclusion not upon federalism theories stressed so heavily in Justice Brandeis' opinion for the Court in *Erie,* but instead on concepts of separation of powers." [5]

Nevertheless, courts implementing congressional policy frequently have occasion to interpret law; thus, a certain amount of federal common law in specific areas is unavoidable. Federal common law may come about when Congress has vested jurisdiction in the federal courts and empowered them to create governing rules of law. *Texas Industries Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) The creation of federal common law should be limited only to what is needed to make sense of congressional legislation. *Pace* at 275. Federal common law has been described as a "necessary expedient." [6]

Federal common law has emerged in several contexts outside of the court's diversity jurisdiction. The most directly related to this case are those actions involving particularly important federal interests. For example, when interstate disputes have arisen, federal common law has been adopted where it would be unfair to apply the statutes or decisional law from either state. See, e.g. *Hinderlider v. Laplata River & Cherry Creek Ditch Company,* 304 U.S. 92, 58 S.Ct. 803, 82 L.Ed. 1202 (1938).

---

3. It must be remembered that the Plan, pursuant to ERISA's deemer clause, is not an insurance company under state law. Therefore, it is not subject to the demands of the § 500.3109a.

4. See, *e.g.,* note, "Federal Common Law and the Preemption of State Law," 42 Rutgers Law Rev. 1067–1088.

5. Sec, Doernberg, et al. "Federal Courts Symposium," 12 Pace La.Rev. 227, 228 (1992) (hereinafter *Pace* ).

6. Meltzer, "State Court Forfeitures of Federal Rights," 99 *Harv.L.Rev.* 1128, 1167–71 (1986).

*Hinderlider* was decided on the same day as *Erie*. In *Erie*, Justice Brandeis wrote: "Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state.... There is no federal general common law." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). In *Hinderlider*, Justice Brandeis, again speaking for the Court, wrote that "whether the water of an interstate stream must be apportioned between the two States is a question of 'federal common law' upon which neither the statutes nor the decisions of either State can be conclusive." *Hinderlider, supra*, 304 U.S. 92, 110, 58 S.Ct. 803, 810 (1938).

Subsequently, Justice Jackson explained the application of federal common law in a non-diversity case in his concurring opinion in *D'Oench, Duhme, and Co. v. Federal Deposit Insurance Corporation*, 315 U.S. 447, 471–472, 62 S.Ct. 676, 685–686, 86 L.Ed. 956 (1942), a unanimous decision. The issue there was whether the accommodation maker of a note could assert a defense of no consideration in a suit by a federal agency to which the note had been assigned. The Court held that he could not. Justice Jackson's opinion provided the clearest explanation as to the source of the governing rule. He wrote:

A federal court sitting in a non-diversity cases such as this does not sit as a local tribunal. In some cases it may see fit for special reasons to give the law of a particular state highly persuasive or even controlling effect, but in the last analysis its decision turns upon the law of the United States, not that of any state. Federal law is no juridical chameleon changing complexion to match that of each state wherein lawsuits happen to be commenced because of the accidents of service of process and of the application of the venue statutes. It is found in the federal Constitution, statutes, or common law. Federal common law implements the federal Constitution and statutes, and is conditioned by them. Within these limits, federal courts are free to apply the traditional common-law technique of decision and to draw upon sources

of the common law in cases such as the present.

315 U.S. at 471–472, 62 S.Ct. at 686.

Perhaps the best known case in this vein is *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943). In that case, a United States check had been stolen, and cashed in Pennsylvania, on the basis of a forged endorsement. The United States sued a bank which had presented the check for payment and had guaranteed prior endorsements. Under the law of Pennsylvania, the delay by the government in notifying the bank that the endorsement was a forgery would bar recovery from the bank. However, a unanimous Court held that the rights and duties of the United States on commercial paper that it issues are governed by federal rather than local law. In choosing the applicable federal rule, the courts may occasionally select state law. But the court indicated that the such a choice would be singularly inappropriate in the *Clearfield* case.

The issuance of commercial paper by the United States is on a vast scale and transactions in that paper from issuance to payment will commonly occur in several states. The application of state law, even without the conflict of laws rules of the forum, would subject the rights and duties of the United States to exceptional uncertainty. It would lead to great diversity in results by making identical transactions subject to the vagaries of the laws of the several states. The desirability of a uniform rule is plain.

318 U.S. at 367, 63 S.Ct. at 575.

To find a uniform rule, the Court looked to the federal law merchant, and found from this that mere delay in giving notice of a forged endorsement does not bar recovery unless there is a clear showing that the delay in giving notice caused damage to the other party.

Another primary area for the development of uniform rules under federal common law has been the relationship between employers and labor unions. Even though the statute, 29 U.S.C. § 185, on its face only grants jurisdiction to federal courts in suits for violation of contracts between an employer and a labor

union, the Supreme Court read the statute as meaning that the substantive law to apply in these suits is federal law, which the courts through judicial inventiveness are to fashion from the policy of the national labor laws. *Textile Workers Union of America v. Lincoln Mills of Alabama,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

Like the other areas where uniform rules have been ordered, the number of situations involving ERISA qualified health and welfare benefit plans is vast. In 1973, there were 142,000 employee welfare benefit plans on file with the Department of Labor.[7] Currently, there are more than 730,000 benefit plans.[8] Congress intended that a federal common law of rights and obligations under ERISA-regulated plans would develop. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987). This Circuit has stated not only in its opinion in this case, but elsewhere as well, that employee benefit plan regulation is an exclusively federal concern, with federal law to apply exclusively, even where ERISA itself furnishes no answer. *In re White Farm Equipment Co.,* 788 F.2d 1186, 1191 (6th Cir.1986).

Lincoln urges the court to look to Michigan law as a guide. This is not an appropriate repository of law for this case. The application of varying state laws to each ERISA plan would lead to a great variance in results, and would subject identical transactions by identical plans to differing state laws. State law under these circumstances cannot supply the answer. *Erie* was not intended for "broadening state power over matters essentially of federal character or for determining whether issues are of that nature." *U.S. v. Standard Oil Co.,* 332 U.S. 301, 307, 67 S.Ct. 1604, 1608, 91 L.Ed. 2067 (1947).

This circuit has recognized in several recent cases that while a review of state insurance laws may sometimes be helpful, it is the straightforward language of the ERISA policy provision which must be given its natural meaning.[9] In *Criss v. Hartford Accident Indemnity Company et al.,* 1992 WL 113370, 1992 U.S.App. Lexis 13288 (6th Cir. 5/28/92) [963 F.2d 373 (table) ] [unpublished], this circuit relied on *Burnham v. Guardian Life Ins. Co. of America,* 873 F.2d 486, 489 (1st Cir.1989), which had emphasized the importance of a strict interpretation of the plain language of an ERISA plan.

This plain language approach was also adopted in another unpublished Sixth Circuit opinion, *Lingerfelt v. Nuclear Fuel Services Inc.,* 1991 WL 11615, 1991 U.S.App Lexis 1822 (6th Cir. 2/5/91,) [924 F.2d 1058 (table) ] where the court denied coverage under an ERISA plan for death resulting from a combination of auto accident and heart disease. The court stated:

"We believe that under the emerging federal common law, we should adhere to the literal language of accident insurance policies [ERISA plans] except where public policy considerations dictate a different course."

The court considered an earlier, related, non-ERISA action decided under Michigan law, *Lingerfelt and Ann Arbor Trust Co. v. Canada Life Assurance Co.,* 810 F.2d 591 (6th Cir.1987), where the court determined that no public policy of Michigan would be threatened by giving a strict interpretation to policy language in Mr. Lingerfelt's insur-

7. D. Brummond, "Federal Preemption of State Insurance Regulation" under ERISA, 62 Iowa L.Rev. 57, 119 (1976), cited in D.B. Boggess, "ERISA's Silent Preemption of State Employee Welfare Benefit Laws: The Perils of Relying upon the Road Less Traveled" 1992 Detroit College of Law Review, vol. 3 pp 745–773, at page 763 (hereinafter *Boggess* ).

8. B. Kobliner, "Avoiding a Pension Rip Off," *Money* 1991 at 96–100, cited in *Boggess* at p. 763.

9. The cases in the circuit court frequently refer to the ERISA-regulated plans as "insurance policies," perhaps a holdover from this circuit's decision in *Northern Group Services v. Auto Owners Ins. Co.,* 833 F.2d 85 (6th Cir.1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988). Although the ERISA plans may be "insurance" in a broad, generic sense, ERISA plans clearly are not insurance policies under state law, pursuant to ERISA's "deemer" clause and the decisions interpreting it, see *FMC v. Holiday,* 498 U.S. 52, 64, 111 S.Ct. 403, 411, 112 L.Ed.2d 356 (1990), reversing a Third Circuit decision which had relied on *Northern Group Services,* and holding that the deemer clause is broader than the savings clause. See also, *Metropolitan Life v. Massachusetts,* 471 U.S. 724, 741, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985).

ance policy that loss resulting from sickness or disease is not considered as resulting from injury.

Thus, under federal common law, the plain language, strictly construed, of the ERISA plan, not the intent of the state legislature in statutorily regulating insurance, must prevail. It is the legislative intent which the decisional law under § 500.3109a effectuates, and thus, makes reference to the state law particularly inappropriate.

In *Federal Kemper Insurance Co., Inc. v. Health Insurance Administration,* 424 Mich. 537, 383 N.W.2d 590 (1986), Justice Riley, writing for the court, construed § 3109a to hold that health insurers were primarily liable for payment for injuries arising out of an auto accident, where both policies contained a coordination of benefits provision. The court grounded its decision on a desire to effectuate the Legislature's intent, expressed in § 3109a of the no-fault act, to allow insureds the option of coordinating their medical benefits. The court rejected the Court of Appeals pro rata allocation, which followed the minority insurance rule at that time: "where conflicting 'other insurance' provisions exist, both are rejected, the [court] prorated liability between plaintiff and defendant on the basis of the proportion of the combined policy limits represented by the limits of each insurer's policy." 383 N.W.2d at 591.

This method was the rule in Michigan for insurance disputes prior to *Federal Kemper.* See, *Farm Bureau Mutual Ins. Co. v. Horace Mann Ins. Co.,* 131 Mich.App. 98, 345 N.W.2d 655 (1983), *lv. den.* 419 Mich. 880 (1984).

This was also the formula followed by the Seventh Circuit when it construed Michigan no-fault law in *Winstead v. Indiana Insurance Company,* 855 F.2d 430 (7th Cir.1988), cited by the court in its opinion order remand here. See, 970 F.2d at 211. However, *Winstead*'s conclusion in light of the subsequent Supreme Court decision in *FMC v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), *supra,* is questionable. Since the insurance company was procedurally barred from raising the preemption issue, the Seventh Circuit stated "that ERISA did

not preempt and thereby does not render unenforceable the 'other insurance' provision's contained in [the insured's] no fault policy." *Id.* at 435. Stated otherwise, if ERISA preempts the statute, the 'other insurance' provision would be unenforceable. This is consistent with the recent Sixth Circuit opinions determining outcome based on the plain language of ERISA plans.

Although the Seventh Circuit purported to apply federal common law, it was in fact "a solomonic apportionment of liability ... in keeping with generally accepted notions derived from state common law. See, *Appleman* [8A Appleman, *Insurance Law & Practice,* § 4910 at 477] and *Couch* [16 Couch on Insurance, § 62:79–62:81 (2nd Ed.) ]." *Id.* at 434. The court found the outcome based on *pro rata* allocation to be "eminently fair and equitable." *Id.* The Seventh Circuit relied heavily on *Federal Kemper* and hornbook insurance law. Such a result may indeed have been fair and equitable, assuming no preemption. However, the finding of preemption and the broad reading of ERISA's deemer clause subsequently given by the Supreme Court in *FMC,* now makes it clear that ERISA plans are not insurance companies under state law. Thus, application of hornbook insurance law and state legislative intent in regulating insurance companies renders a *pro rata* allocation much less "fair and equitable." Further, it is unclear how such a *pro rata* calculation would be made. If *pro rata* allocation is determined to be the appropriate method, further briefing by the parties would be needed.

In the instant case, the Sissons were required under Michigan law to obtain no-fault auto insurance coverage. MCLA § 500.3101 et seq. As even the court in *Winstead* noted, although Michigan law requires an individual to obtain no-fault coverage, she remains free to choose between a lower premium policy containing a "coordination of benefits" provision and a policy with slightly higher premiums without such a provision. The latter coverage is more expensive because it permits an insured to recover the entire amount of loss from the auto insurer, not just what is left unpaid by any other coverage considered "primary." 855 F.2d 430, 432 n. 1.

Lincoln Mutual was only required by statute (MCLA § 500.3109a) to offer lower rates to its insureds in exchange for coordinating no-fault benefits when the insured had "other insurance." *Lincoln Mutual v. Lectron,* 970 F.2d at 208, n. 2.[10] The Plan is not such insurance. It is not clear whether Lincoln Mutual reviewed a copy of the Plan before calculating the premium due for its auto policy. Had it done so, Lincoln would have been aware that the plan was an ERISA qualified plan and that it excluded coverage for auto accidents except to the extent of $300. Lincoln would have had the ability to determine the appropriate auto insurance premium that the Sissons should pay.

In *Nyquist v. Aetna,* 84 Mich.App. 589, 269 N.W.2d 687 (1978), the Michigan Court of Appeals interpreted § 3109a. It found that the legislature intended to require insurers to offer coordination of benefits with Blue Cross/Blue Shield benefits. It further found that the legislature did not intend to use the term "health and accident coverage" in a technical sense, but was specifically concerned with forcing a coordination of benefits with Blue Cross/Blue Shield coverage. *Id.* 269 N.W.2d at 689. Blue Cross had earlier been held not to be "insurance." See, *Michigan Hospital Service v. Sharpe,* 339 Mich. 357, 371, 63 N.W.2d 638 (Bushnel, Jr.) The court found that personal injury insurance benefits overlapped with medical and hospitalization benefits. Thus, the statute required coordination.

In the instant case, the same concerns do not exist. The Plan only pays $300 per covered person for auto accident injuries, and no more. Moreover, the state legislature is without authority under ERISA to tell the Plan what coverage it must provide. While health insurers governed by state law may have an obligation to provide certain types of benefits, including coordination of benefits provision in their policies, no such regulation governs the amount or kind of benefits which may be granted by a plan, because an ERISA benefit plan is not an insurance company and application of state law regulating insurance is preempted.[11]

## MEDICAL EXPENSES TO WHICH FEDERAL COMMON LAW APPLIES

The Plan contends that federal common law would apply only to the portion of the medical expenses which the Plan would cover through stop loss insurance. Lincoln Mutual argues that the Plan misinterprets federal common law. Further, Lincoln Mutual argues that even if the Plan is correct, that federal common law applies only to those medical expenses the Plan pays by catastrophic insurance coverage (stop loss insurance), such a finding would require Lincoln Mutual to sue the Plan's stop loss carrier. Lincoln Mutual has no privity of contract with the stop loss insurer, and thus, does not have a viable action against the Plan's stop-loss insurer.

Importantly, the Court of Appeals drew no distinction between insured benefits or uninsured benefits on the question of ERISA preemption. In fact, as noted by plaintiff, the court rejected that distinction. 970 F.2d at 210. On appeal, Lincoln had argued that the Plan, to the extent it had stop-loss insurance for claims over $75,000, it was insured for ERISA purposes. The Court of Appeals rejected this and Lincoln, quite rightly, recognizes this in its brief.

Accordingly, it is respectfully recommended that summary judgment be granted

---

10. The circuit court continued in that note to state that *Federal Kemper* "held that primary liability falls on the health insurer (in the instant case, the Plan) when a conflict exists between the COB clauses of a no-fault automobile policy and a health insurance policy." However, as discussed elsewhere, it is essential to realize that the Plan is not "insurance" under state law—as the Sixth Circuit recognized by its holding. The Michigan Supreme Court in *Federal Kemper* based its decision on the legislative intent of the exact statute that the circuit court held could not

be applied to the Plan as it was preempted. Thus, *Federal Kemper* may serve as the basis for "federal common law." The circuit's note appears to track the language of *Winstead,* 855 F.2d at 433, where the statute was not preempted and the Plan was treated as an insurance company.

11. Boggess, D. Brian "ERISA's Silent Preemption of State Employee Welfare Benefit Laws: The Perils of Relying upon the Road Less Traveled" 1992 *Detroit College of Law Review,* 3:745–773.

to the Plan, on the basis of waiver, or in the alternative, pursuant to an application of federal common law. It is further recommended that, in any event, it be held that federal common law governs the rights of the parties without respect to whether the Plan has "stop loss" coverage.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D.Mich.LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *United States v. Walters,* 638 F.2d 947 (6th Cir.1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.1991). Filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987); *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.1991). Pursuant to E.D.Mich.LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.